UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X

GLORIA J. GRILLO,

       Plaintiff,

  - against -

EVERGREENE PAINTING STUDIOS,
INC., & JEFFREY GREENE,

       Defendants.

------------------------------X

04 Civ. 06968 (PKC)

MEMORANDUM OF LAW IN
SUPPORT OF MOTION IN LIMINE

    Plaintiff Gloria Grillo ("plaintiff or "Grillo") submits this memorandum of law in support of her motion in limine in anticipation of the trial of her claims against her former employer, EverGreene Painting Studios, Inc. ("EverGreene") and Jeffrey Greene ("Mr. Greene") (collectively "defendants"). Plaintiff seeks to exclude defendants from introducing any evidence that it allowed other employees to take FMLA leave. This evidence should not be admitted because it is irrelevant to the only FMLA claim in this case: whether EverGreene met its obligation to reinstate Grillo to her position following her recovery from a hysterectomy related to her ovarian cancer. Moreover, the evidence should also be excluded because any marginal probative value that it has is substantially outweighed by considerations of undue delay and confusion of the issues before the jury.

## BACKGROUND

### Grillo's Employment and Discharge From EverGreene[1]

Grillo was hired by EverGreene in February 2000 as a construction administrator or assistant project manager. Defendant EverGreene is a decorative arts company that provides restoration, murals, conservation, and decorative painting for public and private clients. Grillo's duties included collective estimating and bidding for restoration and decorative painting projects, administering and coordinating materials, reviewing contracts, and assembling construction crews.

On January 12, 2004, Grillo was a passenger in a car accident and was injured. During the follow-up care that followed Grillo's car accident, doctors found a large mass in her pelvic region. Grillo's doctors later discovered that Grillo had a massive ovarian tumor that would require a full hysterectomy. During the last week of February 2004, Grillo informed Desiree Greene, EverGreene's office manager, of the medical findings. Grillo also told Ms. Greene that her doctors were in the process of scheduling a full hysterectomy for mid-March 2004.

At that time, Grillo was not sure how long she would need to recover after the hysterectomy. Grillo did not expect to be absent from work for more than six weeks. Grillo requested that she be allowed to use her three weeks of vacation and one week of sick time to cover her time off.

On March 18, 2004, Grillo had a hysterectomy and suffered a series of complications. Grillo's doctors told her that the tumor that they had removed was malignant, and that she had ovarian cancer. On March 19, 2004, Grillo spoke to Ms.

---

[1] These facts are taken from plaintiff's Amended Complaint and the Stipulated Facts from the Pretrial Order.

Greene from the hospital and told her about the diagnosis. Ms. Greene told Grillo that she should not worry about her job because it was her job to get well.

On March 30, 2004, Grillo's oncologist told her that the test results of the areas surrounding her ovaries had shown no signs of cancer, and that Grillo did not need to have chemotherapy. Because of the hysterectomy and complications, however, Grillo's oncologist prescribed six weeks of recovery. Grillo decided that it would be better to recuperate in Virginia, where her family lives. Grillo called Ms. Greene and informed her that she was going to stay with her family during her recovery. Ms. Greene asked Grillo to keep in touch regarding her progress.

On or around April 12, 2004, Grillo called EverGreene and spoke with Ms. Greene. Grillo told Ms. Greene that she would be able to return to work full-time on Monday, May 3. Grillo asked if there was any work that she could do from home during the last two weeks of April, and Ms. Greene said that she would ask Mr. Greene and get back to her. Grillo did not hear back from Ms. Greene.

On April 26, 2004, Grillo e-mailed Ms. Greene, Jeffrey Greene, the President and Owner of EverGreene, telling them that she was back in New York and looking forward to returning to the office on the following Monday, May 3. On April 27, 2004, Grillo received an e-mail from Mr. Greene and Ms. Greene stating that there was "not enough work in the office to support another staff member."

On April 28, 2004, Grillo called Ms. Greene and asked her to explain the e-mail message. Ms. Greene told Grillo that she would need to speak to Mr. Greene, but that it was her understanding that there was not enough work in the office for Grillo to return. Grillo reminded Ms. Greene that she was on medical leave, that she had always

intended to come back, and that no one had warned her that her job could be in jeopardy. Ms. Greene replied by saying that Grillo had used up all of her vacation and sick time and that EverGreene owed her nothing.

On May 3, 2004, in response to an e-mail from Grillo, Grillo received an e-mail from EverGreene's receptionist, Irene Gemelos, stating that her termination date was the date of Ms. Greene and Mr. Greene's e-mail. Within a few weeks after plaintiff was dismissed from her employment, EverGreene advertised similar positions to the one held by plaintiff in the New York Times and on its website.

The Amended Complaint and The Disputed Evidence

Plaintiff filed the Complaint in this matter on August 27, 2004. She filed an Amended Complaint on January 4, 2005. The Amended Complaint contains two claims under the FMLA and two separate disability discrimination claims under the New York State Human Rights Law and the New York City Administrative Code. The Amended Complaint's First Cause of Action alleges a substantive violation of the FMLA. Specifically, plaintiff claims that EverGreene interfered with, restrained, and denied plaintiff's exercise of her rights under the FMLA to return to her position or an equivalent position after leave to recuperate from a serious health condition. The Second Cause of Action alleges that EverGreene retaliated against her for exercising her right to FMLA leave. Plaintiff has decided, however, only to present the substantive FMLA claim to the jury, and not the retaliation claim. See Joint Proposed Jury Instructions, Instructions 6-8.

In the course of discovery, EverGreene has made it clear that it intends to present evidence that some of its other employees have taken medical leave over the past several decades and that those employees have been reinstated to their positions

following such leave. For example, EverGreene has included Robin Roi on its witness list, who is a current employee of EverGreene. At her deposition, Ms. Roi testified that during her employment with EverGreene, she took leaves of absences three times; twice because of her pregnancies and once to care for an ill child. Each time she took a leave, Ms. Roi testified, her employment was reinstated. Similarly, defendant Jeffrey Greene testified at his deposition that "many, many, many" people who have worked for him over the years have taken sick leave and have been taken back by EverGreene.

## ARGUMENT

### EVIDENCE THAT OTHER EVERGREENE EMPLOYEES HAVE BEEN PERMITTED TO TAKE FMLA LEAVE SHOULD BE EXCLUDED

Defendants should not be allowed to introduce any evidence concerning other EverGreene employees who have taken family or medical leave in the past and were reinstated to their previous positions. Such evidence is irrelevant to plaintiff's claim that she was impermissibly denied reinstatement under the FMLA, and is therefore excluded under Fed. R. Evid. 402. In addition, any marginal value that this "other employee" evidence may have is substantially outweighed by the likelihood of jury confusion and undue delay if the evidence is admitted. See Fed. R. Evid. 403.

A.  The "Other Employee" Evidence is Irrelevant to Plaintiff's
    Substantive Entitlement To Reinstatement Under the FMLA

The FMLA entitles eligible employees to take a total of twelve weeks of leave during a 12 month period due to a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Furthermore, when an employee completes her FMLA leave, she is generally entitled to the position she occupied before she took leave. See 29 U.S.C.

§ 2614(a)(3)(B). However, if an employee is denied reinstatement following FMLA leave, an employer may prove that the employee would have been dismissed for reasons unrelated to her FMLA leave. See 29 C.F.R. § 825.216(a)(1); Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 962-64 (10th Cir. 2002); O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349 (11th Cir. 2000); Duckworth v. Pratt & Whitney, Inc., 152 F.3d 1, 5 (1st Cir. 1998)

Courts have recognized two theories of recovery under the FMLA: the entitlement/inference theory and the retaliation/discrimination theory.[2] The interference or entitlement theory is derived from the FMLA's creation of substantive rights. If an employer interferes with an employee's entitlement to the substantive rights provided by the statute (e.g., the right to reinstatement), an employee prevails on an entitlement/inference theory regardless of whether an employer intends to discriminate or retaliate against an employee for taking FMLA leave. See Smith, 298 F.3d at 960 ("If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a deprivation of this right is a violation regardless of the employer's intent."); accord King v. Preferred Technical Group, 166 F.3d 887, 891 (7th Cir. 1999); Hodges v. General Dynamics Corp., 144 F.3d 151, 189 (1st Cir. 1998). This is in contrast to the discrimination/retaliation theory, in which an employer's intent to discriminate is an element of the claim. See King, 166 F.3d at 891.

---

[2] The statutory basis for the entitlement/inference theory is 29 U.S.C. § 2515(a)(1), which provides: "It shall be unlawful for any employer to interfere with, restrain, or deny the existence of or the attempt to exercise, any right provided in this subchapter." The discrimination/retaliation theory is based on 29 U.S.C. § 2515(a)(2), which states: "It shall be unlawful for any employer to discharge or in any manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

Here, as stated above, plaintiff only seeks to have the jury charged on an entitlement/interference theory, not a discrimination/retaliation theory. Therefore, EverGreene's intent in denying plaintiff reinstatement to her position is irrelevant. See Smith, 298 F.3d at 960.³ Accordingly, because EverGreene's mindset is not at issue for purposes of plaintiff's FMLA claim, the fact that EverGreene has apparently reinstated other employees who have taken FMLA leave is not relevant. Assuming arguendo that such evidence may have been relevant to an FMLA retaliation theory if EverGreene's intent was at issue, plaintiff no longer is pursuing a retaliation theory. As such, defendant has no legitimate reason to introduce evidence of other employees being reinstated following leave.

The issue in dispute on plaintiff's FMLA claim is whether plaintiff would have been fired even if she had not taken leave. 29 U.S.C. § 2614(a)(3)(B); 29 C.F.R. § 825.216(a)(1). EverGreene claims plaintiff would have been fired even if she had not taken FMLA leave because of a combination of business conditions, a reorganization of its office and plaintiff's performance. See Joint Pretrial Order, Summary of Claims and Defenses. Whether EverGreene in the past reinstated other employees who took leave has no tendency to make EverGreene's explanation of its actions toward Grillo more probable or less probable. See Fed. R. Evid. 401. Therefore, defendant should not be permitted to introduce any of evidence concerning other employees who have taken FMLA leave.

---

³ Whether defendants intended to discriminate against plaintiff is still at issue with respect to plaintiff's disability discrimination claim. However, the fact that EverGreene has apparently reinstated employees from FMLA leave has no relationship to whether defendants discriminated against plaintiff because of her ovarian cancer.

B.  In the Alternative, the "Other Employee" Evidence
    Should Be Excluded Under Fed. R. Evid. 403

The Court should also exclude defendant's proposed evidence concerning the treatment of other employees who have taken leave pursuant to Fed. R. Evid. 403, which allows the Court to bar evidence if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay [or] waste of time."

The evidence that defendant seeks to introduce related to these employees will doubtlessly entail substantial time during the trial. Moreover, should defendant be permitted to introduce this evidence, plaintiff will be required to probe into the circumstances of each of these individuals and clarify for the jury how each of their situations is different from plaintiff's situation. For example, we expect that much of the evidence will be very remote in time, concerning leaves that were taken decades ago. Thus, in addition to presenting all of the evidence related to plaintiff's claims, the parties will also be engaging in multiple mini-trials about these other employees. Given the marginal relevance of this evidence, the Court should exclude it on the grounds that it will lead to undue delay and confusion of the issues before the jury. See Fed. R. Evid. 403.

## CONCLUSION

For all of the above stated reasons, plaintiff's motion in limine should be granted.

Dated:  New York, New York
June 6, 2005

                                      Respectfully submitted,

                                      VLADECK, WALDMAN, ELIAS &
                                      ENGELHARD, P.C.

By: _____
                                      Kevin T. Mintzer (KM 4741)
                                      Attorneys for Plaintiff
                                      1501 Broadway, Suite 800
                                      New York, New York  10036
                                      (212) 403-7300

Of Counsel:
    Kevin T. Mintzer
    Michele Host